# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# URBANA DIVISION

| | |
|---|---|
| CLAYTON ROCKMAN, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 09-CV-2029 |
| | ) |
| BLAIR LEIBACH, JOE BOYER, | ) |
| ELIZABETH ROBSON, KEITH ANGLIN, | ) |
| VICTOR CALLOWAY, MARCIA KEYS, | ) |
| RICHARD KEYS, RICHARD TERRELL, | ) |
| WESLEY BROWN, and JOHN CHAMBERS, | ) |
| | ) |
| Defendants. | ) |

## OPINION

This case is before the court for ruling on the Motion for Summary Judgment (#90) filed by Defendants, Blair Leibach, Joe Boyer, Elizabeth Robson, Keith Anglin, Victor Calloway, Marcia Keys, Richard Keys, Richard Terrell, Wesley Brown, and John Chambers. This court has carefully reviewed the arguments of the parties and the documents filed by the parties. Following this careful and thorough review, Defendants' Motion for Summary Judgment (#90) is GRANTED.

## FACTS[1]

Plaintiff, Clayton Rockman, was incarcerated at the Danville Correctional Center

---

[1] The facts are taken from Defendants' statement of undisputed facts, Plaintiff's statement of additional undisputed facts and the documents submitted by the parties. This court has only included facts which are adequately supported by evidence in the record. This court has not considered conclusory, self-serving statements included in Plaintiff's affidavit. In responding to a Motion for Summary Judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure, it is not sufficient for a plaintiff "to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

(Danville) until he was transferred to the Centralia Correctional Center in August 2009. Plaintiff testified during his deposition that he started filing grievances at Danville in 2003. Defendant Robson was the librarian at the Danville Correctional Center. Defendants Boyer and Brown were correctional officers at Danville. Plaintiff claims that these Defendants retaliated against him for filing grievances complaining about their conduct and prison conditions. Specifically, Plaintiff claims that Robson denied him access to legal materials, issued threats and disciplinary reports, failed to issue call passes to the library and provided false and misleading information to correctional officials causing Plaintiff to be removed from the library. He claims that Boyer threatened the issuance of false disciplinary reports, provided false information in an effort to get Plaintiff placed in segregation, and issued an October 5, 2006 disciplinary ticket.

Plaintiff claims that Brown gave him menacing looks and harassed him. On February 16, 2007, Plaintiff filed a grievance and stated that Brown told him to remove a ski band Plaintiff was wearing on his neck when Plaintiff was outside in extremely cold weather. This grievance was denied because Plaintiff's ski band was meant to be worn over the ears and inmates have been advised that any clothing is not to be worn in a manner other than what it was designed for. On June 3, 2007, Plaintiff filed a grievance and stated that Brown harassed him when Plaintiff was on his assignment at the gym. Plaintiff stated that he was looking through the double doors inside the gym. Plaintiff stated that Brown left his post at the chowline to tell Plaintiff in a hostile manner to move away from the door. Plaintiff stated that Brown evidently felt that Plaintiff did not move fast enough because he then threatened

2

Plaintiff. This grievance was denied because Brown stated that he was performing his duties investigating why an inmate was in a certain area. Plaintiff also filed numerous other grievances claiming that Brown harassed him, which were also denied. In addition, Plaintiff claims that Brown ordered Correctional Officer Ness to issue him a disciplinary report for failing to possess identification on June 12, 2007. A final summary report dated June 16, 2007, stated that Plaintiff admitted he forgot his ID and pleaded guilty to the charge of violating institutional rules by failing to possess identification.

Plaintiff has filed the Declarations of several people who were inmates with him at Danville. In his Declaration dated January 30, 2012, Anthony M. Lewis stated that he observed Brown harassing Plaintiff and observed Brown and Boyer call Plaintiff out of the library and send him back to the housing unit. Lewis stated that he observed Brown telling Plaintiff to move away from the gym doors and forcing Plaintiff to go back into the pool room. In his Declaration dated August 9, 2011, Freddie Falconer stated that he observed Brown threaten Plaintiff and saw Boyer and Brown remove Plaintiff from the library. In his Declaration dated November 16, 2010, Don LaRue stated that he observed Brown harass Plaintiff by instructing Plaintiff to stop playing "pool, chess, or ping-pong" and by changing the channel when Plaintiff was watching television. LaRue stated that he observed Brown tell Plaintiff to get away from the gym doors. In his Declaration dated November 17, 2010, Lamel Johnson stated that he observed Brown and Boyer call Plaintiff out of the library and talk to Plaintiff, after which Plaintiff returned to the library. Johnson stated that he also observed Brown "single out" Plaintiff.

Plaintiff is diabetic, suffers from hypertension and is Hepatitis C positive. Plaintiff testified that he was put on a high protein diet with a snack bag in 2002 for his diabetes. Plaintiff testified that he started taking medication for Hepatitis C in June 2008. Plaintiff testified that the medication made him sick to his stomach and caused him to lose weight so Dr. Ameji ordered a double portion diet on June 9, 2008. Plaintiff claims that Defendants Calloway, Marcia Keys, Richard Keys and Terrell were deliberately indifferent to his serious medical need by denying Plaintiff a double portion diet. Plaintiff testified that he stopped taking the medication for Hepatitis C in July 2008 because he did not receive the double portion diet ordered by Dr. Ameji.

The evidence shows that Marcia Keys is Food Service Manager at Danville. She is responsible for the safety and sanitation of the dietary unit, the scheduling of dietary staff, ordering of food and following the master menu for offender meals. She is also responsible for ensuring offenders receive therapeutically prescribed diets that are approved by the Illinois Department of Corrections (Department). The Department's Therapeutic Diet Manual sets out the guidelines for ordering therapeutic diets and outlines the therapeutic diets approved for service within the Department. Marcia Keys lacks the authority to exceed the guidelines outlined within the Therapeutic Diet Manual. Therapeutic diets are ordered by physicians and dentists from the approved list. All diet orders are recorded in the medical records by the attending physician and a copy of the order is sent to food service.

A double portion diet is not included in the Therapeutic Diet Manual as a diet approved by the Department. Diets that are deemed necessary by staff physicians that are

4

not on the approved diet list are to be approved by the Agency Medical Director prior to implementation. Further, diets not on the approved list require the Food Service Manager to obtain a food plan by the Food Service Administrator. Therefore, a therapeutic diet order for a double portion diet requires approval from Susan Griswold, the Department's Food Service Administrator.

The dietary department at Danville has no record of receiving a therapeutic diet order of a double portion diet for Plaintiff. On June 13, 2008, dietary received an order for a High Protein diet for Plaintiff. The diet order indicates that Mary Miller, the Health Care Unit Administrator, signed the order for the physician. On July 2, 2008, Dr. Ameji prescribed a High Protein/High Calorie diet for Plaintiff. The initials MM next to Dr. Ameji's signature indicate that Mary Miller signed for the physician. This order stated that Plaintiff was receiving medical treatment causing weight loss. The order was received by dietary on July 14, 2008. A High Protein/High Calorie diet is included in the Therapeutic Diet Manual. It is described as a regular diet in the form of three meals daily from the food service department plus a snack. Further supplements are provided to the individual from the health care unit one to three times daily, based on the attending physician's prescription. The Manual specifically states that "[t]here are no double trays provided for this diet from the food service department."

When a therapeutic diet order is received seeking a non-approved diet, the procedure within the dietary department is to stamp the order and return it to the Health Care Unit. It is the responsibility of the Health Care Unit to determine the necessity of the non-approved

5

diet and seek Agency Medical Director approval or order a pre-approved diet from the Manual. Marcia Keys stated in her affidavit, dated December 12, 2011, that she would have sought the necessary approval from Susan Griswold, Food Service Administrator, if a therapeutic diet not included in the Therapeutic Diet Manual was received by dietary with all necessary approvals.

The record contains a copy of a therapeutic diet order for Plaintiff which ordered a "double portion" for three months. The order was dated July 29, 2008, and was signed by a physician. The order includes a notation that it was received by dietary on August 6, 2008. However, the order does not show that it was recorded. The double portion diet order did not have the approval of the Agency Medical Director and, therefore, was never implemented.

On June 19, 2008, Plaintiff sent a memo to Mary Miller asking her to please speak to Marcia Keys about the denial of his medically prescribed diet. On July 2, 2008, Mary Miller responded to Plaintiff and stated: "There is not an approved diet known as a double portion diet. I did however order you a high protein high calorie diet. I would suggest you eat in dietary greater than 50% of the time or the diet will be cancelled."

On June 22, 2008, Plaintiff filed an emergency grievance directly to Warden Anglin regarding his diet. On June 25, 2008, Anglin determined that "an emergency is not substantiated" and Plaintiff "should submit this grievance in the normal manner." On July 7, 2008, the counselor referred the grievance to the Health Care Unit for review.

On July 21, 2008, Plaintiff wrote Marcia Keys to inform her that he was being denied

his medically prescribed diet. Plaintiff stated that Dr. Ameji had prescribed a "double portion" diet because he had lost 11 pounds from January to June 2008 and was still losing weight. On November 14, 2008, Terry Fueyo, a registered nurse, responded to Plaintiff's grievance on behalf of the Health Care Unit. Fueyo stated that the Department "has no such diet as a double portion diet." She stated that, if Plaintiff felt he was still having a nutrition issue, he should sign up for nurse sick call so the physician could assess his nutritional status. After receiving Fueyo's response, the grievance officer recommended that Plaintiff's grievance be considered moot. On November 20, 2008, Anglin signed off on this recommendation. On December 24, 2008, the Department denied Plaintiff's grievance.

PROCEDURAL HISTORY

On February 2, 2009, Plaintiff filed a pro se Complaint (#1) in this court. Plaintiff was found financially able to pay the $350 filing fee and paid the fee on February 12, 2009. A merit review hearing was held and Plaintiff subsequently filed his First Amended Complaint (#13). On July 20, 2009, this court entered an Order (#17). This court noted that the Seventh Circuit had previously cautioned Plaintiff "that the submission of frivolous papers and arguments may result in sanctions." This court then determined that Plaintiff's First Amended Complaint presented a frivolous claim. Plaintiff claimed that various Defendants denied him access to the courts by failing to provide adequate legal services, which led to the dismissal of a lawsuit he had filed in the Southern District of Illinois. Plaintiff claimed that the case was dismissed because he was unable to meet discovery and dispositive motion deadlines. This court noted, however, that Plaintiff's lawsuit was actually

dismissed on the merits. This court therefore concluded that Plaintiff's claim of denial of access to the courts was grounded in lies and was frivolous. This court imposed a $500 fine on Plaintiff, which Plaintiff paid on August 27, 2009.

On October 14, 2010, Plaintiff filed a pro se Second Amended Complaint (#53) against Defendants Blair Leibach, Joe Boyer, Elizabeth Robson, Keith Anglin, Victor Calloway, Marcia Keys, Richard Keys, Rick Terrell, Wesley Brown, and John Chambers. In Count I, Plaintiff alleged that Defendants Robson, Boyer and Brown harassed and retaliated against him for engaging in protected conduct. In Count II, Plaintiff alleged that Defendants Calloway, Marcia Keys, Richard Keys and Terrell were deliberately indifferent to a serious medical need by denying Plaintiff a double portion diet. In Count III, Plaintiff alleged that Defendants Leibach, Anglin, Calloway and Chambers failed to properly supervise and failed to institute appropriate policies and procedures. In Count IV, Plaintiff alleged that Defendant Boyer retaliated against him for engaging in protected conduct.

On December 12, 2011, Defendants filed a Motion for Summary Judgment (#90) and attached a Memorandum of Law in support and supporting exhibits. Plaintiff was allowed additional time to file his response to the Motion for Summary Judgment. On January 24, 2012, Plaintiff filed his Response in Opposition to Motion for Summary Judgment (#93) and a Memorandum of Law (#94) with attached exhibits. On February 3, 2012, Defendants filed their Reply (#95). Plaintiff filed a Supplemental Response in Opposition (#96) on February 16, 2012.

ANALYSIS

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Singer v. Raemisch, 593 F.3d 529, 533 (7th Cir. 2010). However, a court's favor toward the nonmoving party does not extend to drawing "[i]nferences that are supported by only speculation or conjecture." See Singer, 593 F.3d at 533, quoting Fischer v. Avanade, Inc., 519 F.3d 393, 401 (7th Cir. 2008).

The party opposing summary judgment may not rely on the allegations contained in the pleadings. Waldridge, 24 F.3d at 920. "[I]nstead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Koszola v. Bd. of Educ. of City of Chicago, 385 F.3d 1104, 1111 (7th Cir. 2004), quoting Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003). Specifically, to survive summary judgment, "the nonmoving party must make a sufficient showing of

9

evidence for each essential element of its case on which it bears the burden at trial." Kampmier v. Emeritus Corp., 472 F.3d 930, 936 (7th Cir. 2007), citing Celotex Corp., 477 U.S. at 322-23.

PLAINTIFF'S CLAIMS

I. RETALIATION

Count I of Plaintiff's Second Amended Complaint alleged that Defendants Robson, Brown and Boyer harassed and retaliated against Plaintiff because he exercised his right to file grievances complaining about their conduct. Count IV of Plaintiff's Second Amended Complaint alleged that Boyer retaliated against him for engaging in protected conduct. "An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." DeWalt v. Carter, 224 F.3d 607, 618 (7th Cir. 2000), citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977). Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. See, e.g., Walker v. Thompson, 288 F.3d 1005, 1008-09 (7th Cir. 2002); Babcock v. White, 102 F.3d 267, 274-75 (7th Cir. 1996). To succeed on a retaliation claim, a plaintiff must prove: (1) that he engaged in protected conduct; and (2) that he was retaliated against for engaging in this protected conduct. DeWalt, 224 F.3d at 618. In order to meet this burden, a plaintiff must prove that the protected conduct "was the reason" for retaliatory conduct. Waters v. City of Chicago, 580 F.3d 575, 584 (7th Cir. 2009). Mere chronology of events is not enough to show a genuine issue of material fact for trial. See Thomas v. Walton, 461 F. Supp. 2d 786, 796 (S.D. Ill. 2006). Moreover, the allegedly retaliatory act

must be one that "could be said to have had the effect of deterring an inmate 'of ordinary firmness' from engaging in similar activity." Thomas, 461 F. Supp. 2d at 796, quoting Johnson v. Kingston, 292 F. Supp. 2d 1146, 1152 (W.D. Wis. 2003). Therefore, claims of verbal harassment are not actionable under Section 1983. See DeWalt, 224 F.3d at 612.

### A. ROBSON

Robson was the librarian at Danville during the time Plaintiff was incarcerated at Danville. Plaintiff alleged that Robson denied Plaintiff access to legal material, issued threats and disciplinary reports, failed to issue call passes to the library and provided false and misleading information to correctional officials out of retaliation for Plaintiff's engagement in protected conduct.

This court first agrees with Defendants that Plaintiff's claim that Robson went through his legal storage boxes and confiscated law books is time-barred. Plaintiff's grievance regarding this incident is dated January 8, 2006, and the grievance was denied by the Department on April 5, 2006. For actions under § 1983, the statute of limitations is governed by the personal injury statute of limitations in the state where the alleged injury occurred. Wallace v. Kato, 549 U.S. 384, 387 (2007). The statute of limitations for personal injury claims in Illinois is two years. Wallace, 549 U.S. at 387, citing 725 Ill. Comp. Stat. 5/13-202 (West 2003); see also Shropshear v. Corp. Counsel of City of Chicago, 275 F.3d 593, 594 (7th Cir. 2001). Plaintiff's original complaint in this action was filed on February 2, 2009. Therefore, any claim based upon conduct which occurred in 2006 is time-barred. This court also concludes that some of Plaintiff's complaints against Robson were dismissed by

11

this court as frivolous when this court dismissed Plaintiff's claims of the denial of access to the courts.

After careful review of the documentation presented in this case, this court agrees with Defendants that Plaintiff possesses no evidence that Robson's remaining actions were taken against Plaintiff for purposes of retaliating against Plaintiff. While Plaintiff certainly was not satisfied with conditions in the library or his access to the library, Plaintiff has not shown that any of the conduct he is complaining about occurred because he filed grievances. This court additionally notes that to satisfactorily state a claim for an infringement of the right of access to the library to pursue a legal claim, prisoners must allege an actual injury. See In re Maxy, ___ F.3d ___, 2012 WL 858617, at *2 (7th Cir. Mar. 15, 2012), citing Lewis v. Casey, 518 U.S. 343, 351 (1996); Ortiz v. Downey, 561 F.3d 664, 671 (7th Cir. 2009). "That is, they must allege some action by the prison has frustrated or is impeding an attempt to bring a nonfrivolous legal claim." Maxy, 2012 WL 858617, at *2, citing Christopher v. Harbury, 536 U.S. 403, 415 (2002). This court concludes that Plaintiff has not alleged or shown that any of Robson's actions frustrated or impeded an attempt to bring a nonfrivolous legal claim. For all of the reasons stated, Defendant Robson is entitled to summary judgment on Plaintiff's claims.

B. BOYER

Defendant Boyer was a correctional officer at Danville during the time Plaintiff was incarcerated there. Plaintiff states that Boyer threatened the issuance of false disciplinary reports, provided false information in an effort to place Plaintiff is segregation and issued an

12

October 5, 2006 disciplinary ticket out of retaliation for Plaintiff's protected conduct. This court agrees with Defendants that Plaintiff has no evidence that Boyer took any of these actions for purposes of retaliation against Plaintiff. Plaintiff has based his retaliation claim against Boyer solely on the sequence of events and his personal belief that Boyer had a retaliatory motive. This is not sufficient to survive summary judgment and Boyer is entitled to summary judgment on Plaintiff's claims.

## C. BROWN

Brown was also a correctional officer during the time Plaintiff was incarcerated at Danville. Plaintiff has a long list of complaints about Brown, including menacing looks and harassing behavior. One of Plaintiff's claims against Brown is that Brown ordered another officer to issue a disciplinary ticket to Plaintiff on June 15, 2007, for failure to have identification. The record shows that Plaintiff admitted guilt to the disciplinary ticket to the adjustment committee and thus admitted failure to possess identification is a violation of facility rules. This court therefore agrees with Defendants that the disciplinary ticket was issued because Plaintiff violated facility rules and not because of retaliation.

Based upon the evidence submitted by Plaintiff, Plaintiff's other claims against Brown are that Brown told him to remove a ski band from around his neck when the weather was extremely cold, told him to move away from the gym doors, had him removed from the library, gave him menacing looks, told him to stop playing "pool, chess, or ping-pong" and changed the channel when Plaintiff was watching television. This court concludes that this conduct by Brown was not serious enough that it "could be said to have had the effect of

13

deterring an inmate 'of ordinary firmness' from engaging in similar activity." See Thomas, 461 F. Supp. 2d at 796. In fact, the record shows that Plaintiff continued to file grievances and was not, in fact, deterred in any way by Brown's conduct. In addition, most of Plaintiff's claims relate to verbal harassment and menacing looks, conduct which is not actionable under § 1983. See DeWalt, 224 F.3d at 612.

As far as the claims that Brown had Plaintiff removed from the library, this court concludes that these claims also are not actionable under § 1983. As this court has previously noted, Plaintiff cannot successfully state a claim for denial of access to the library without alleging an actual injury. See Maxy, 2012 WL 858617, at *2. Plaintiff has not alleged or shown that Brown's conduct frustrated or impeded an attempt to bring a nonfrivolous legal claim. See Maxy, 2012 WL 858617, at *2. This court concludes that Brown is entitled to summary judgment on Plaintiff's claims.

## II. DELIBERATE INDIFFERENCE

Plaintiff has alleged that he was prescribed a double portion diet as a result of weight loss associated with his medical conditions and that Defendants Calloway, Marcia Keys, Richard Keys and Terrell were deliberately indifferent to his serious medical needs when they refused to provide him with the double portion diet ordered by his doctor.

Prison officials violate the Eighth Amendment proscription against cruel and unusual punishment when they display "deliberate indifference to serious medical needs of prisoners." Estelle v. Gamble, 429 U.S. 97, 104 (1976). In order to state a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate

14

indifference to serious medical needs." Estelle, 429 U.S. at 106. "It is only such indifference that can offend 'evolving standards of decency' in violation of Eighth Amendment." Estelle, 429 U.S. at 104. Deliberate indifference requires the prison official to act with a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994), quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991). Further, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

The record in this case shows that a "double portion" diet was not an approved therapeutic diet included in the Department's Therapeutic Diet Manual.[2] Because this diet was not an approved diet included in the Manual, it had to be approved by the Agency Medical Director. The record shows that this diet was never approved by the Agency Medical Director. This was the reason a double portion diet was not provided to Plaintiff. Instead, Plaintiff was provided with a High Protein/High Calorie diet that was ordered by the doctor and included in the Manual. This court concludes that none of the Defendants could have been deliberately indifferent by failing to provide Plaintiff with a "double portion" diet that was not approved by the Agency Medical Director.

In addition, Plaintiff has relied solely on his own conclusory statements that a double portion diet was needed and that his medical conditions got worse because he did not receive

---

[2] This court notes that the Manual contains a large number of special diets, available for medical, allergy, and religious reasons. It is not hard to imagine that providing the approved, listed diets when ordered can create a strain on the resources of the prison. Therefore, it seems reasonable to place some restrictions on the necessity to provide non-approved special diets.

a double portion diet. This court concludes that Plaintiff has not met his burden to show that failing to provide a double portion diet was deliberately indifferent to a serious medical need.

### III. REMAINING DEFENDANTS

Plaintiff claimed that Leibach, the former Warden at Danville, Anglin, Danville's current Warden, Calloway, the Assistant Warden of Programs, and Chambers are liable for failing to adequately supervise their subordinate employees and for approving the alleged constitutional violations of their subordinates. Because this court has concluded that Plaintiff has not shown that any constitutional violations occurred, these claims must fail.

Plaintiff has also argued, at length, that Anglin is liable for failing to treat his grievance regarding the double portion diet as an emergency. However, denial of a grievance alone is insufficient to prove that a defendant purposefully took any action with the intent of violating constitutional rights. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). Moreover, because this court has concluded that Defendants did not violate Plaintiff's rights when he was denied a non-approved double portion diet, Anglin's denial of his request for emergency treatment of his grievance cannot have violated his rights.

IT IS THEREFORE ORDERED THAT:

(1) Defendants' Motion for Summary Judgment (#90) is GRANTED. Judgment is entered in favor of Defendants and against Plaintiff on all of Plaintiff's claims.

(2) This case is terminated.

(3) If Plaintiff wishes to appeal this court's decision, he may file a Notice of Appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(1)(A). A

Motion for Leave to Appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. See Fed. R. App. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.

ENTERED this 26th day of March, 2012

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE